IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SARBABI MASINDET, M.D., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO.: 2:23-cv-319-DCN-MHC |
| ) | |
| vs. ) | |
| ) | |
| Bon Secours St. Francis Xavier Hospital, ) | |
| Inc.; Roper Hospital, Inc.; Roper St. ) | |
| Francis Mount Pleasant Hospital; ) | |
| STANLEY W. WILSON, M.D., Vice- ) | **COMPLAINT** |
| President and Chief Medical Officer, ) | |
| individually and in his official capacity with ) | |
| Bon Secours St. Francis Xavier Hospital, ) | |
| Inc., Roper Hospital, Inc. and Roper St. ) | |
| Francis Mount Pleasant Hospital, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Comes now the Plaintiff, Sarbabi Masindet, M.D., by and through undersigned counsel, alleges and says unto this Honorable Court the following:

**Introduction**

1. This is an action seeking declaratory judgment, equitable relief, compensatory damages, punitive damages, costs, and attorney's fees for discrimination based on race and national origin in violation of the 1991 Civil Rights Act; 42 U.S.C.A. 1981, as amended; 42 U.S.C.A. 1985, *et. seq.*; Title VI, §1557 of the Affordable Care Act, and civil conspiracy.

### Jurisdiction

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1343 *et. seq*. and 42 U.S.C. a 2000 *et. seq*.

3. Compensatory and punitive damages are sought pursuant to the 1991 Civil Rights Act *et. seq.* as amended; 42 U.S.C.A. 1981, *et. seq.*, as amended; 42 U.S.C.A. 1985, *et. seq.*, as amended; and Title VI of the 1964 Civil Rights Act.

4. Furthermore, the Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act, as well as other appropriate Federal and State Statutes that allows for attorney's fees to be recouped and recovered in these types of action.

5. The venue of this action lies in the Charleston Division of the South Carolina District Court because the Plaintiff currently resides in the County of Charleston, State of South Carolina. Further, the Defendants are corporations, individuals or partnerships, existing under the State of South Carolina with their principal place of business located in the County of Charleston, State of South Carolina.

### Parties

6. Plaintiff is an American citizen who is an African-American physician with privileges at the Defendants' hospital. Additionally, the Plaintiff is board-certified in his chosen specialty and/or subspecialty.

7. Plaintiff, Dr. Masindet, is board certified in Internal Medicine and Cardiovascular Diseases and has been in private practice in Charleston County, South Carolina since 1995. Plaintiff, Masindet, was, among other things, Assistant Clinical Instructor in

Medicine at State University of New York in Stony Brook, New York from 1993 to 1995.

8. That at all times relevant herein, the Defendant, Stanley W. Wilson, M.D. was acting, individually and/or in his official capacity with Bon Secours St. Francis Xavier Hospital, Inc. Roper Hospital, Inc., and Roper St. Francis Mount Pleasant Hospital relative to the matters and things hereinafter alleged.

## Facts

9. That at all times relevant herein, Plaintiff asserts that some, if not all, of the Defendants received federal funds for a number of reasons in rendering services to their patients.

10. The Defendants are principally, *inter alia*, engaged in the business of providing healthcare to the citizens of the State of South Carolina.

11. Further, Plaintiff asserts that the Defendants received federal financial assistance under §1557 *et. seq.* of the Affordable Care Act, as well as Medicaid or Medicare, and other financial assistance from the federal government in regards to rendering healthcare to citizens of this state.

12. The Defendants have repeatedly and consistently engaged in a course of conduct that was designed to violate the Plaintiff's rights as a physician under 42 U.S.C.A. 1981; 42 U.S.C.A. 1985, *et. seq.*; Title VI of the 1964 Civil Rights Act; and the 1991 Civil Rights Act, as amended. Plaintiff is informed and believes that the Defendants, by and through their agents, servants, and employees, have, over the years, specifically directed medical staff personnel to not refer patients to the Plaintiff and/or other

African-American doctors, solely because of his and/or their national origin and/or race.

13. For example, Plaintiff recalls a list that was in writing that contained the names of minority and/or African-American doctors that was composed by the Defendants and/or its agents or servants for the purpose of preventing hospital staff, including, but not limited to, on-call doctors and/or hospitalists, from referring any patients to these African-Americans or minority doctors.

14. Plaintiff asserts that the hospitalists, including on-call doctors, were and are directed by senior-level management officials, including, but not limited to, Wilson and others to refer patients to Caucasian doctors and/or medical groups to the exclusion of minority doctors and/or African-American medical groups.

15. The Plaintiff, as well as other African-American doctors, have, on more than several occasions, directly complained to senior level management, including, but not limited to the Defendant referred to in allegation #14, and former Chief Executive Officer of the Defendants' hospital about this practice of discriminating against the Plaintiff and other African-American doctors because of their race and/or national origin, in referring patients to majority or predominantly Caucasian doctors or specialty groups. All of these complaints fell on deaf ears, notwithstanding the fact that one senior level management official apologized to the Plaintiff and a couple of other African-American doctors for this racially discriminatory conduct by the Defendants listed in allegation #14, and others.

16. The Plaintiff, as well as other African-American doctors, have been threatened with Peer Review because they or he complained to some of the Defendants about the

discriminatory conduct exhibited by senior level staff, as well as, executive staff of the Defendants' corporation.

17. In particular, the Defendant, Stanley Wilson, MD has a history that is known to the Defendant's hospital or with the exercise of a modicum of reasonable inquiry, would have known, for attempting to initiate and/or conduct peer reviews of African-American doctors that has privileges at the Defendant's hospital solely because of their race and complaining about a mirrored of racially discriminatory conduct practiced by the Defendant's hospital and its agent, servant, employees or senior level staff. For example, the Defendant, Wilson, in 2022, tried to conduct a peer review of Dr. Osemwegie E. Emovon, an African-American nephrologist, because the latter allegedly spoke improperly to a female nurse during a critical life-saving procedure being performed on a patient by Dr. Emovon.

18. Additionally by way of example, in 2019, the Defendant, Wilson, along with two other doctors that held management positions with the Defendant's hospital, attempted to conduct and/or initiate a sham peer review against this Plaintiff, solely because of his race, when the former, together with his cohorts, asserted that the Plaintiff did not secure a consult prior to performing an invasive procedure on a patient and that the Plaintiff was not readily reachable by telephone by the hospital staff in regards to his patients. Both of these false premises that was going to be the basis to conduct a sham peer review by Defendant, Wilson and/or the Defendant's hospital were patently untrue.

19. Further, subsequent to the Plaintiff complaining about the discriminatory conduct, including but not limited to, the hereinabove mentioned preferential referral of

patients to non-minority healthcare providers, such as the Plaintiff, the Defendants increased their efforts to deny referrals of any caliber to this Plaintiff, as well as other minority healthcare providers.

20. On many occasions, the Plaintiff has had patients that have sought treatment at the Defendants' hospital. On some of those occasions, the Defendants, through their agent and/or servants, including, but not limited to Stanley W. Wilson, M.D., Vice-President and Chief Medical Officer, in a concerted and well-orchestrated manner, referred patients to outside majority Caucasian providers, sometimes without the patients consent.

21. Another example is an African-American doctor, on one occasion, was at the Defendants' hospital when one of his patient sought treatment at the same hospital. Notwithstanding the fact that the patient wanted to be and requested to be referred to his African-American doctor for follow-up visits, the doctor or hospitalist that treated the patient insisted that the patient go to a Caucasian health care provider for follow-up visits.

22. The Defendants have, by and through their agents and/or servants, continually engaged in efforts to interfere with the contracts that this Plaintiff and other African-American doctors have with their patients, by way of referring the Plaintiff's patients to Caucasian health provider when these patients had to seek emergency room treatment. For example, the Plaintiff, within the last, approximately 24 months, was the cardiologist for a patient at the Defendant's hospital, who was undergoing treatment for cancer. The Plaintiff had a long-established doctor/patient relationship with this patient. This patient listed the Plaintiff as one of her healthcare providers.

The Defendant's hospital, through its agent and/or servant, insisted, notwithstanding the fact that the Plaintiff was listed as the patient's cardiologist, that the patient follow up with a Caucasian cardiologist after being released from the Defendant's institution.

23. Plaintiff asserts that these same individual Defendants, as well as the institutional Defendant, Roper Hospital, were aware of, encouraged, and enforced the discriminatory policy of referring the Plaintiff's patients to Caucasian cardiologists, all because of the race and/or national origin of the Plaintiff. The Plaintiff asserts that the discriminatory conduct complained of herein, was perpetrated against the Plaintiff by the Defendants, solely because of the Plaintiff's race, national origin and, in part, because the Plaintiff complained of discriminatory conduct engaged in by the Defendants.

24. Furthermore, in line with what the Plaintiff is alleging in this action, the hereinabove mentioned African-American doctor alleged that some of his established patients' medical records were routinely switched to reflect other Caucasian physicians as their primary care provider without that doctor or the patient's knowledge or consent.

25. The Plaintiff alleges that the Defendants, along with other conspirators, on repeated occasions, acted in concert with each other conspiring to deprive the Plaintiff of the contractual rights that he had established with his patients, in that the conspirators would routinely refer the Plaintiff's patients to non-outside base Caucasian doctors without the patient or the Plaintiff's consent. Plaintiff further asserts that, because of the hereinabove mentioned conspiratorial efforts of the Defendants acting in concert and together with other conspirators and/or the Defendants' agents, servants, and employees, in addition to other discriminatory acts against the Plaintiff, all because of

his race and national origin, caused the Plaintiff special damages in an amount to be proven at trial.

26. Further, Plaintiff asserts that Caucasian doctors similarly situated to the Plaintiff, were and are treated significantly more favorable than the Plaintiff or other minority doctors are, inasmuch as the Defendants rarely, if ever, refer Caucasian doctors' patients that presented themselves for treatment at Bon Secours St. Francis Xavier Hospital, Inc., Roper Hospital, or Roper St. Francis Mount Pleasant Hospital, to non-Caucasian healthcare providers.

27. The Plaintiff has had admitting privileges as well as credentials at the Defendant's hospital for a period of approximately twenty-eight (28) years. During that time, this Plaintiff has not been the subject matter of any legitimate peer review, investigatory or adverse actions by the Defendant's hospital regarding his skills set as a cardiologist.

28. Furthermore, Plaintiff has not received any official notification from the Defendant's hospital or its agents that his skills as a practicing cardiologist gave rise to, not even remotely, the administration of poor or substandard care to his patients in particular, or the medical the community in general.

29. Plaintiff asserts that similarly situated Caucasian doctors employed at or having admitting privileges to the Defendant's hospital are not treated as this Plaintiff is being treated by the Defendant's hospital and/or its agent(s).

30. Plaintiff assert that the Defendants, Bon Secours St. Francis Hospital, Roper St. Francis Hospital, and Mount Pleasant Hospital, have a history of discriminatory conduct in regards to race as it relates to minority and/or African-American doctors,

patients, and staff. Specifically, in the case of one African-American male doctor, whom is no longer employed at Roper St. Francis Hospital, the Defendants did not accord that African-American doctor space or adequate space in which to render professional services to his patients. That African-American doctor was made to stand up any counter, repeatedly, to render services to his patients while Caucasian doctors, whom were similarly situated to that doctor, did not have to suffer that kind of indignity.

31. In particular, this doctor, who was African-American, had to do his chart notes while standing up as opposed to white doctors who were accorded pods and/or offices in which to chart their notes. The same African-American doctor, on many occasions, was not provided a room in which to see or treat his patients while white doctors, who were similarly situated to this African-American doctor, was always given rooms or pods to see or treat their patients.

32. Plaintiff is informed and believes that, without any factual basis, the Defendant, Wilson along with others at the Defendant's hospital, referred to an outside reviewer one or more of the Plaintiff's files on health care provided to patient(s) under the guise of conducting the peer review. The Plaintiff was never consulted with or notified in writing, about the alleged deficient care supposedly rendered by Plaintiff as it relates to his patients. Caucasian doctors who have privileges and credentials at the Defendant's hospital are treated differently and Plaintiff is aware, based on belief and information, of no Caucasian doctor that is not consulted or notified by the Defendants their patient chart(s) being referred to an outside reviewer for peer review. Plaintiff has never been a Defendant in a medical malpractice suit, never been

sanctioned in any fashion by the South Carolina Board of Medical Examiners or any other State Board of Medical Examiners in which the Plaintiff is licensed to practice.

### FOR A FIRST CAUSE OF ACTION
### (Race Discrimination)
### (42 U.S.C.A. Code §1981, as amended)

33. Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

34. Plaintiff alleges that the Defendants' conduct towards the Plaintiff were and are engaged in by the Defendants solely because of the Plaintiff's race, in violation of 42 U.S.C.A. Code 1981, as amended.

35. Plaintiff further alleges that he was retaliated against to the extent that the Plaintiff continuously complained to the Defendants because he was in opposition to the discriminatory practices of the Defendants as it relates to the Plaintiff and/or other African-American employees and/or doctors of the Defendants' corporation.

36. As a result of the unlawful violation and/or race discrimination by the Defendants, the Plaintiff suffered damages, both punitive and actual, in an amount to be proven at trial.

### FOR A SECOND CAUSE OF ACTION
### (Retaliation)
### (42 U.S.C.A. Code §1981, as amended)

37. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

38. The Plaintiff was retaliated against by the Defendants for engaging in a protected activity and that each time the Plaintiff complained, either verbally or in writing, the retaliation continued and became more severe by the Defendants.

39. As a result thereof, the Plaintiff suffered damages, both punitive and actual, if applicable, in an amount to be proven at trial.

## FOR A THIRD CAUSE OF ACTION
### (Violation of 42 U.S.C.A. Code §1985, *et seq.*)

40. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

41. Plaintiff asserts that because his rights accorded to him under 42 U.S.C.A. Code §1985 were violated, as a result and because of his race, all in violation of the hereinabove mentioned statute.

42. As a result thereof, the Plaintiff suffered damages, both punitive and actual, if applicable, in an amount to be proven at trial.

## FOR A FOURTH CAUSE OF ACTION
### (Violation of Title VI of the 1964 Civil Rights Act)

43. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

44. Plaintiff asserts that the Defendants' conduct in discriminating against him as an African-American practitioner and/or healthcare provider, is contravened and in direct conflict with the edicts of Title VI of the 1964 Civil Rights Act.

45. Plaintiff asserts that the discrimination against the Plaintiff is intentional and directly calculated to do harm, by way of causing financial loss to the Plaintiff and other African-American physicians in the Defendants' service area.

### FOR A FIFTH CAUSE OF ACTION
### (Civil Conspiracy)

46. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

47. The Plaintiff asserts that the Defendants, along with outside Caucasian owned and operated cardiology practices in concert with each other and among themselves, conspired to engage in a course of conduct and a common design to damage Plaintiff's practice, thereby causing the Plaintiff special damages, both punitive and actual, in an amount to be proven at trial.

**WHEREFORE**, Plaintiff prays for damages as follows:

a.  Compensatory damages, loss wages and benefits; damages accorded under 42 U.S.C.A. 1981, as amended; 42 U.S.C.A. 1985, as amended; and the 1991 Civil Rights Act, as amended;

b.  Punitive damages in an amount to be proven at trial;

c.  Attorney's fees and costs for this suit pursuant to the 1976 Civil Rights Attorney's Fees Act:

d.  Prejudgment interest on all claims;

e.  Injunctive relief;

And for such other relief as this Court may deem just, equitable and proper.

                                                BY:    *s/Edward M. Brown, Esquire*
                                                                       EDWARD M. BROWN, ESQUIRE
                                                                       Attorney for the Plaintiff
                                                                       Federal I. D. No. 1510
                                                                       P. O. Box 20261
                                                                       Charleston, SC  29413
                                                                       (843) 559-9224
                                                                       (843) 559-9226 (Fax)

Charleston, South Carolina

Dated:  January 23, 2023

13